USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/12/619

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ROBERT HARRIS et al.,

        *Plaintiffs*,

    -*against*-

ZIMMER HOLDINGS, INC., et al.

        *Defendants*.

------------------------------------------------------------X

18 Civ. 11271 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Robert Harris and Dianna Harris move to remand this action to the State of Ohio's Cuyahoga Court of Common Pleas for a lack of complete diversity between the parties. For the reasons that follow, Plaintiffs' motion is DENIED.

### BACKGROUND

This is a product liability action alleging that Defendants designed, manufactured, marketed, and sold a defective artificial hip (the "Device") that was implanted in Plaintiff Robert Harris. *See generally* Complaint, Pl.'s Ex. 1., Dkt. 19.[1] Ohio residents Robert Harris and Dianna Harris filed this action in Ohio state court alleging Ohio state causes of action against diverse Defendants Zimmer, Inc., Zimmer Holdings, Inc. n/k/a Zimmer Biomet Holding, Inc. (collectively "Zimmer") and Scott Klabunde,[2] and non-diverse Defendants Zimmer Ohio, S.L.

---

[1] References to the docket refer to the docket assigned to this action after it was transferred to the Southern District of New York, 18-cv-11271 (PAC).

[2] According to Defendants, Scott Klabunde is a citizen of Florida. Def. Mem. at 1. Because this fact is undisputed by Plaintiffs and immaterial to this motion, the Court adopts Defendant's representation for purposes of this Order.

9

Klabunde Corporation,[3] Ray Hinch, and John Does 1 through 10 (collectively, the "Ohio Defendants"). *Id.* ¶¶ 6-18. Plaintiffs seek to hold the Ohio Defendants liable for their role in distribution of the Device, and allege in their Complaint that:

> Distributor Defendants owed various duties to Plaintiff, but breached those duties by committing positive tortious actions against Plaintiff. Those positive tortious acts by the Distributor Defendants, were committed in their individual and/or corporate capacity, and include, but are not limited to, the following:
>
> a. Distributor Defendants failed to convey adequate warnings to Plaintiff Robert Harris directly or through Plaintiff's physicians;
>
> b. Distributor Defendants were in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous medical devices which have caused harm to Plaintiff Robert Harris;
>
> c. Distributor Defendants negligently distributed, marketed, advertised and/or promoted the dangerous medical devices;
>
> d. Distributor Defendants made negligent misrepresentations regarding the safety and efficacy of the dangerous medical devices;
>
> e. Distributor Defendants negligently failed to provide sufficient information and instructions to Plaintiff Robert Harris and/or Plaintiff's prescribing physicians regarding the subject medical device including defects therein.

*Id.* ¶ 22. Plaintiffs offer specific factual allegations in support of these assertions, including that the Ohio Defendants and their sales representatives (John Does 1-10), were "regularly present within the operating room during implantation of the devices," *id.* ¶ 88, paid surgeons to speak at courses they organized, along with the Zimmer Defendants, to promote the Device, *id.* ¶ 93, and provided information to Plaintiff's orthopedic surgeon about the Device with the "intended

---

[3] Plaintiffs allege that at the time the Device was implanted in Robert Harris, Ohio Zimmer "was a fictitious name . . . and [was] owned and operated by Defendant S.L. Klabunde Corporation. Complaint ¶ 12. According to Defendants, S.L. Klabunde Corp. and Zimmer Ohio are actually the same legal entity. *See* Decl. Klabunde Corporation, Def. Ex. 2 ¶ 3. Because this distinction does not alter the Court's analysis for purposes of this Order, the Court continues to reference these Defendants as separate entities, as laid out in Plaintiffs' Complaint.

purpose of convincing and inducing Plaintiff's surgeon to use the Device instead of other hip implants." *Id.* ¶ 96.

Plaintiffs allege a total of eight causes of action but join the Ohio Defendants in only three: (1) defective design, in violation of the Ohio Products Liability Act ("OPLA"), Ohio Revised Code ("ORC") § 2307.71 *et seq.*, pursuant to § 2307.75; (2) failure to warn, in violation of OPLA, ORC § 2307.76, *id.* ¶¶ 101-147, and violation of the Ohio Consumer Sales Practice Act ("OCSPA"), ORC § 1345.02 *et seq. Id.* ¶¶ 174-180.

Defendants filed a notice of removal on November 9, 2018 based on diversity jurisdiction. *See* Notice of Removal, Dkt.1. To overcome the citizenship of the Ohio Defendants, which would typically defeat such jurisdiction, Defendants alleged in their Notice that the Ohio Defendants had been fraudulently joined because Plaintiffs' claims against them were implausible. Defendants also attached sworn affidavits from Defendants S.L. Klabunde Corporation, its former owner Scott Klabunde, and its former employee Ray Hinch, in which the declarants deny that they played any role in the manufacturing, labeling or packaging of the Device, or had knowledge of its claimed defects. *See* Decl. of S.L. Klabunde Corporation, Def. Ex. 2, Dkt. 28; Declaration of Scott Klabunde, Def. Ex. 3; Decl. of Ray Hinch, Def. Ex. 4.[4]

Plaintiffs initially filed their motion to remand in the Northern District of Ohio on November 27, 2018. Dkt. 10. Subsequently, the action was transferred to the Southern District of New York pursuant to an order from the Judicial Panel on Multidistrict Litigation, Dkt. 14, and joined to the *In Re: Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Technology and Versys Femoral Head Products Liability* multidistrict litigation

---

[4] On a motion for remand premised on fraudulent joinder, the Court may look beyond the pleadings and consider affidavits submitted by the parties. *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 353 (S.D.N.Y. 2010).

3

("MDL") currently before this Court. *See* 18-md-2859. After the action was transferred, Plaintiffs renewed their motion for remand. *See* Dkt. 18.

## DISCUSSION

### I. Standards

#### A. The Law of the Transferee Court Controls

When analyzing federal questions of law, the MDL transferee court applies the law of the circuit in which it is located. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. 1:00-1898, 2005 WL 106936, at *5 (S.D.N.Y. Jan. 18, 2005) ("Even after *Lexecon*, district courts should apply the law of the transferee circuit."). The law of the Second Circuit is therefore controlling for all issues of federal law raised in this remand motion.

#### B. Diversity Jurisdiction & Fraudulent Joinder

A cause of action originally filed in state court may be removed to federal court by defendants when "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Federal district courts enjoy diversity jurisdiction where, assuming the requisite amount in controversy is met, the suit is between "citizens of different States." 28 U.S.C. § 1332(a)(1). It is well-established that such jurisdiction is proper only when there is "complete diversity," which does not exist if any plaintiff is a citizen of the same state of any defendant. *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 88 (2d Cir. 2005).

Nonetheless, "a plaintiff may not defeat a federal court's diversity jurisdiction and a

4

defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1988). To prove such conduct, known as "fraudulent joinder," "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461. In deciding a motion premised on fraudulent joinder, the court resolves all factual and legal issues in plaintiff's favor, "and all doubts [are] resolved against removability and in favor of remand." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 JMF, 2015 WL 3776385, at *1 (S.D.N.Y. June 17, 2015).

Where a defendant's fraudulent joinder claim is premised on a failure to state a cause of action, "courts apply the state pleading rules relevant to the particular pleading at issue." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 JMF, 2015 WL 3776385, at *2; *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 471-72 (S.D.N.Y. 2006).[5] "If state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand must be denied." *Kuperstein*, 457 F. Supp. 2d at 471.

---

[5] Defendants misrepresent *In re Rezulin Prod. Liab. Litig.*, No. 00 CIV. 2843 (LAK), 2002 WL 31852826, at *3 n. 5 (S.D.N.Y. Dec. 18, 2002) as supporting their position that courts in the Second Circuit "apply both federal and state court pleadings standards." Def. Mem. at 7. In *In re Rezulin Prod. Liab. Litig.*, the court applied the federal pleading standards only after concluding that it was identical to the Mississippi standard relevant to the underlying claims. 2002 WL 31852826, at *3 n. 5. This holding does contradict the persuasive authority of more recent cases, cited above, which unequivocally apply the state pleadings standards to such claims. *See, e.g., Kuperstein*, 457 F. Supp. 2d at 471-72 ("Because the purpose of fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims, I will refer to the state pleading standards as they have been applied by state courts to similar claims.").

## II. Analysis

Defendants here do not allege outright fraud. Instead, they contend there is no possibility of recovery on Plaintiffs' OPLA and OSCPA claims against the Ohio Defendants.[6]

### A. Ohio Pleadings Standards

Unlike the heightened federal pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Ohio applies "liberal notice pleading requirements" which simply require the plaintiff to provide fair notice of the claims and the grounds upon which they rest. *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, at *3. "The simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define disputed facts and issues and to dispose of nonmeritorious claims." *Vinicky v. Pristas*, 163 Ohio App.3d 508, 511 (8th Dist. Ct. App. 2005). "Because it is so easy for the pleader to satisfy [Ohio's pleading statute], few complaints are subject to dismissal." *Loveday v. Essential Heating Cooling & Refrigeration, Inc.*, 4th Dist. Gallia No. 08CA4, 2008-Ohio-4756, at *3. Still, "factual allegations must be enough to raise a right to relief above the speculative level." *Gallo*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, at *2.

### B. OPLA Claims

Under OPLA, a supplier can be held liable for an allegedly defective product either independently, *see* ORC § 2307.78(A), or derivatively. *See* ORC § 2307.78(B). Plaintiffs rely solely on the standard for independent supplier liability in arguing their OPLA claims have merit, *see* Pl.'s Mem. at 12-13; Pl.'s Reply at 8, but, notably, their Complaint does not allege

---

[6] Zimmer Ohio and S.L. Klabunde Corp. are now dissolved. *See* Pl.'s Mem. at 12, n. 2; Klabunde Corp. Decl. ¶ 3. Nonetheless, Defendants do not dispute that these entities are still liable under Ohio law for conduct which occurred prior to their dissolution. *See* Ohio Rev. Code. § 1701.88 (B)(2).

6

ORC § 2307.78 as an independent cause of action. Plaintiffs instead join the Ohio Defendants to their defective design and failure to warn claims pursuant to ORC §§ 2307.75 and 2307.76, claims for which liability is limited to manufacturers unless an exception under ORC § 2307.78(B) applies, *see Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 657–58 (S.D. Ohio 2015), which they neither argue nor allege. Since Plaintiffs' Complaint provides no basis for holding suppliers of the Device liable under OPLA, their OPLA claims against the Ohio Defendants fail as a matter of law.

Since Plaintiffs are still entitled to remand if their remaining OSCPA claim affords them possible relief, the Court turns to that claim next.

### C. OSCPA Claim

The OCSPA "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in [O.]R.C. 1345.02 and 1345.03." *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St. 177, 180 (2006). The OCSPA "is a remedial law . . . designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to [O.]R.C. 1.11." *Id.* The law does not apply to "[c]laims for personal injury or death," O.R.C. § 1345.12, although a plaintiff may recover damages arising from bodily injury so long as the injury itself is not the basis of the OSCPA claim. *Whitaker*, 111 Ohio St. at 184.

Plaintiffs' OSCPA claim is a claim for bodily injury and barred by § 1345.12. Plaintiffs allege in their Complaint that the Defendants, including the Ohio Defendants, violated the OSCPA by representing that the Device was "free from defects and fit for its intended purpose," and "safe and effective," while simultaneously concealing knowledge of its "serious risks." Compl. ¶¶ 174-180. But Plaintiffs cannot prove that the Device had concealed "defects" and

7

"serious risks," without showing the Device caused bodily injury. Here, "[t]he predominate harm, which is the gravamen of this case, is the alleged physical harm associated with" the Device. *Kelley v. Insys Therapeutics, Inc.*, No. 3:18CV1774, 2019 WL 329600, at *7 (N.D. Ohio Jan. 25, 2019). As such, Plaintiffs' claim for recovery under OSCPA is precluded. *Id.*; *see also Utz v. Howmedica Osteonics, Corp.*, No. 1:06 CV 1963, 2008 WL 11378848, at *5 (N.D. Ohio Sept. 19, 2008) (dismissing OSCPA claim as bodily injury claim in a suit alleging defects to a spinal rod device); *Chamberlain v. Am. Tobacco Co.*, No. 1:96-CV-02005-PAG, 1999 WL 33994451, at *17 (N.D. Ohio Nov. 19, 1999) (OSCPA claim barred in suit alleging tobacco caused physical harm).[7]

Accordingly, even under Ohio's lenient pleadings standard, Defendants have met their high burden of showing fraudulent joinder as to the Ohio Defendants. Since Plaintiffs have no likelihood of success on any of their three claims against the Ohio Defendants, their citizenship does not defeat this Court's jurisdiction and remand is not warranted. *See Almeciga v. Ctr. for Investigative Reporting, Inc.*, 121 F. Supp. 3d 379, 386 (S.D.N.Y. 2015).

## CONCLUSION

For the above stated reasons, Plaintiffs' motion for remand is DENIED. The Clerk of the Court is directed to close the motion at Dkt. 18.

Dated: New York, New York
      April 26, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

[7] Defendants also argue that Plaintiffs' OSCPA claim is preempted by OPLA. The Court does not reach this issue because the claim is barred under the OSCPA itself.